IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| INTEGRATED DIRECT MARKETING, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:14-cv-1183 (LMB/IDD) |
| ) | |
| DREW MAY and MERKLE, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Before the Court is Defendant Drew May's Motion for Judgment on the Pleadings, which seeks a ruling that Plaintiff Integrated Direct Marketing, LLC's conversion claim fails on the basis that Arkansas law does not provide a cause of action for conversion of non-trade secret electronic data. For the reasons that follow, the Court will move the Arkansas Supreme Court to answer one question of law because the remaining claim in this litigation presents an unresolved question of Arkansas law that may be determinative of this pending civil action.

I. BACKGROUND

Plaintiff Integrated Direct Marketing, LLC ("IDM") commenced this suit against former employee Drew May ("May") and his new employer Merkle, Inc. ("Merkle"), alleging that May misappropriated IDM's confidential and proprietary information as well as its trade secrets and then used that information for his benefit and that of Merkle. Mem. Op. [Dkt. No. 295] at 2. IDM and Merkle compete to provide data-integrated customer relationship management ("CRM") services to high-tech companies involved in the data-driven marketing business. Id. at 5. May, an Arkansas resident, was hired to open IDM's Little Rock, Arkansas office and served as its Executive Vice President for Data Integration from January 2012 until March 11, 2014, when

IDM terminated his employment. Id. at 6. May did not attempt to hide his displeasure about this separation. Id. May began working for Merkle on May 5, 2015 as Vice President and Client Partner in the "High Technology/B2B Vertical Markets Group." Id. During discovery, a digital forensic examination revealed that May retained many IDM files on his personal external hard drive after he was fired by IDM and during his employment with Merkle and the initial stages of the instant litigation. Id. at 7. By retaining these electronic files, May violated Paragraph 9 of the Confidentiality Agreement he signed upon beginning employment with IDM, which required that he return or destroy all company property upon termination. Id.

IDM filed suit against both May and Merkle, alleging in part that May wrongfully took IDM's confidential and proprietary information. Am. Compl. [Dkt. No. 57] ¶¶18-28, 76-81. The information allegedly converted by May consisted exclusively of electronic data that he downloaded, "backed up," or otherwise copied to his personal external hard drive. See id. Specifically, IDM alleged that May "copied more than 300 files to his external hard drive," including almost all of his IDM e-mails and their attachments, contracts and statements of work containing confidential pricing information, a business plan for IDM's Shopper Recognition Project, a project proposal for IDM's Dell Consumer File Install, Dell's requirements for IDM's customer-data integration project, and "numerous" other files containing "IDM's budgets, upcoming projects that IDM was bidding on, and IDM proprietary solution data." Id. ¶¶ 22-27. IDM claimed that these files "would let [May] directly compete with IDM going forward." Id. ¶ 25. Based on this alleged activity, IDM asserted that May "wrongfully appropriated and exercised authority over IDM's confidential and proprietary information" and that his actions "constitute[d] a conversion of IDM's property." Id. ¶¶ 77, 79.

2

After an extensive period of discovery, both defendants moved for summary judgment on all counts. In a Memorandum Opinion and accompanying Order issued on September 8, 2015, the Court granted Merkle's Motion for Summary Judgment in total and granted May's Motion for Summary Judgment on all counts except for the conversion claim in Count III, which is now the sole remaining claim to be decided at the trial currently scheduled for November 16, 2015. Mem. Op. at 60-61. The Court ruled that Count III would "go forward for now," despite its reservations about whether a taking of electronic data could support a conversion claim under Arkansas law, because May did not raise that argument on summary judgment and neither party had briefed the issue. Id. at 47 n.25 (citing Infinity Headwear & Apparel, LLC v. Coughlin, 447 S.W.3d 138, 143 (Ark. Ct. App. 2014)). In allowing the conversion claim to go forward, the Court struck any evidence of actual damages and ruled that IDM would only be entitled to nominal damages and injunctive relief should it prevail on Count III. Id. at 47. The Court now has before it May's Motion for Judgment on the Pleadings, in which he seeks to resolve Count III in his favor.

## II. DISCUSSION

May's Motion for Judgment on the Pleadings seizes upon the Court's stated reservations regarding whether the Arkansas tort of conversion encompasses the taking of non-trade secret electronic data. May argues that Arkansas "has not recognized a cause of action for the conversion of intangible electronic data" and that IDM's claim consequently fails as a matter of law. Def. Drew May's Mem. of P&A in Supp. of His Mot. for J. on the Pleadings [Dkt. No. 299] ("Def.'s Br.") at 3. In the alternative, May requests that the Court certify the question of whether electronic data can be converted to the Arkansas Supreme Court so that he will not be bound by a judgment based on a misreading of Arkansas law. Def. Drew May's Reply in Supp. of His Mot.

for J. on the Pleadings [Dkt. No. 307] ("Def.'s Reply") at 6. IDM argues in response that Arkansas law does support a claim for conversion of electronic data and that May's argument to the contrary is based on "stray dicta…taken out of context." Pl., Integrated Direct Marketing, LLC's Mem. in Opp'n to Def. Drew May's Mot. for J. on the Pleadings [Dkt. No. 305] ("Pl.'s Opp'n") at 1. IDM has not explicitly contested May's request for certification but has argued in an unrelated motion that it would be prejudiced by a delayed trial date. Pl. Integrated Direct Marketing, LLC's Opp'n to Counsel's Mot. for Leave to Withdraw [Dkt. No. 317] at 5.

### A. Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial," and may raise the defense of failure to state a claim upon which relief can be granted in that motion. See Fed. R. Civ. P. 12(c), (h)(2)(B); see also Newport News Indus. v. Dynamic Testing, Inc., 130 F. Supp. 2d 745, 749 (E.D. Va. 2001). Such a motion is governed by the standard for a Rule 12(b)(6) motion. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, the deciding court must presume that the complaint's factual allegations are true and must "draw all reasonable factual inferences in [the non-movant's] favor." Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). The court should enter judgment for the movant "when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law." O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

"In adjudicating non-federal questions, a federal court must apply the law of the state." United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). If a federal court's decision is governed by state law and there is no "state

statute or a controlling decision directly in [sic] point," the court should not ignore "[c]onsidered dicta in the opinions of the highest state court;" rather, it must follow such dicta if it is "a clear exposition of the law" and not in conflict with other decisions of the highest state court. Sherby v. Weather Bros. Transfer Co., 421 F.2d 1243, 1244 (4th Cir. 1970). Additionally, if only a state intermediate appellate court has ruled on the issue, that decision must be followed absent "other persuasive data that the highest court of the state would decide otherwise." Little, 52 F.3d at 498 (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)) (ruling that a federal court could not independently interpret a state statute where there was "an opinion of the second highest court in the state directly on point").

### B. Analysis

The parties' arguments hinge on the interpretation of a handful of Arkansas cases. May relies primarily on the Arkansas Court of Appeals' decision in Infinity Headwear for the proposition that Arkansas law does not allow a claim for conversion of purely electronic data, while IDM points to the Arkansas Supreme Court's ruling in Godwin v. Churchman, 810 S.W.2d 34 (Ark. 1991) for the contrary proposition.

The plaintiffs in Godwin alleged that the defendants "removed the [client] files…copied the computer diskettes which were the property of Plaintiffs, took the furniture which was the property of Plaintiffs and took over the Plaintiffs' accounting practice." Godwin, 810 S.W. 2d at 38. The court found that the plaintiffs had stated a claim for conversion because they had sufficiently alleged that the defendants "exercised dominion over property in violation of the rights of the owners." Id.

Recently, the Eighth Circuit interpreted that decision in Stonebridge Collection, Inc. v. Carmichael, 791 F.3d 811 (8th Cir. 2015) in determining whether allegations that a former

5

employee copied computer files stated a claim for conversion under Arkansas law. Stonebridge, a pocket knife engraver, alleged that one of the defendants downloaded onto a flashdrive numerous Adobe PDF ("PDF") and Corel Draw ("CDR") files from Stonebridge's computer system, including "forms and templates…proof selection forms, final proof pages, and art" for inside and outside customers. Id. at 815-16. That defendant then left his job at Stonebridge and began working for a competitor, at which time he uploaded the files to his new work computer and to his personal computer and emailed some of the files to other defendants. Id. at 816.

The Stonebridge court stated that Arkansas law defines conversion as a wrongful and "distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights." Id. at 817 (quoting Hatchell v. Wren, 211 S.W.3d 516, 521 (Ark. 2005)). In applying that standard to the facts at hand, the court rejected the defendants' argument that "Stonebridge had no possessory interest in copies of the art it created for its customers" and that the Godwin court "considered only the taking of files and furniture, not the copying of the computer diskettes, to constitute an allegation of conversion." Id. Instead, the Eighth Circuit reasoned that the Godwin court had not "single[d] out the diskette copying as any less a conversion than the physical removal of the files and furniture" and therefore affirmed the district court's ruling that under Arkansas law the defendants had converted the copies of inside-customer files. Id. In reaching this conclusion, the Stonebridge court also cited Holland v. Walls, 621 S.W.2d 496 (Ark. Ct. App. 1981), an Arkansas Court of Appeals decision which held that making microfilm copies of books was a conversion because it involved an exercise of dominion over property that violated the owner's right to possession. Id. (citing Holland, 621 S.W.2d at 497-98). The court then affirmed the lower court's ruling that the defendants had not converted the outside-customer files because Stonebridge "freely gave" them to one of the defendants,

6

meaning that the defendants' use of them "was not 'inconsistent with [Stonebridge's] rights.'" Id. at 819 (alteration in original) (quoting Hatchell, 211 S.W.3d at 521).

IDM argues that Godwin and Stonebridge, read together, demonstrate that under Arkansas law electronic data can be converted when an individual impermissibly copies and exercises dominion over such data in contravention of the owner's rights. Pl.'s Opp'n at 3-4. IDM also cites Holland and Ross v. D&M Consulting, Inc., No. CA 94-993, 1995 WL 574483 (Ark. Ct. App. Sept. 27, 1995), another Arkansas Court of Appeals ruling, for the proposition that state law provides for conversion of electronic data and other intangibles. Id. at 4-5 (citing Holland, 621 S.W.2d at 498 (ruling that regardless of "[w]hether the conversion was actual or constructive," the appellee committed a conversion when she wrongfully exercised dominion over the appellant's property) and Ross, 1995 WL 574483, at *1-2 (upholding a damages award for a conversion claim where appellants failed to return computer software and used it without authorization)).[1]

---

[1] IDM also cites to an Arkansas Circuit Court order denying a motion to dismiss a conversion claim in Boston Mountain Title Co., Inc. v. Fantinel, No. CV-02-1063, 2002 WL 34218070 (Ark. Cir. Ct. Aug. 13, 2002). Pl.'s Opp'n at 5. The plaintiff's Amended Complaint in that action asserted claims for "conversion, fraud and damage to tangible personal property" and alleged in part that the defendant fraudulently accessed the plaintiff's office and copied onto a disk the computer software that contained the plaintiff's title plant "index" but was caught with the disk before leaving the office. Amended Complaint ¶¶ 1, 7, Boston Mountain Title Co., Inc. v. Fantinel, No. CV-2002-12, 2002 WL 34225540 (Ark. Cir. Ct. 2002). The court defined conversion as "the exercise of control over the [plaintiff's] goods in exclusion or defiance of the owner's rights" and ruled that, "[t]aking the Plaintiff's allegations as true…the Complaint sufficiently allege[d] at least a temporary exercise of dominion and control…over Plaintiff's property in defiance of the Plaintiff's right to possession." Boston Mountain Title Co., Inc., 2002 WL 34218070. May argues that an unpublished interlocutory order is not binding and that the allegations in Boston Mountain concerned conversion of "tangible personal property" rather than electronic data. Def.'s Reply at 5-6. The complaint and ruling as a whole are unclear as to whether they refer to intangible or tangible property or both and do not explicitly address whether Arkansas law allows for conversion of intangibles; therefore, they are not determinative of the issue at hand.

May argues that none of the cases cited by IDM are controlling or persuasive authority and contends that the Court must defer to "the clear statement of Arkansas law in Infinity Headwear." Def.'s Reply at 2-6. May dismisses the Stonebridge decision as an irrelevant misreading of Arkansas law because "it is the Arkansas courts and not the Eighth Circuit that speak authoritatively to the content of Arkansas law," and repeats the failed argument of the Stonebridge defendants that the Godwin court found conversion because physical property was taken in addition to intangible property. Def.'s Br. at 4. May further argues that the technology at issue in Godwin and Holland predates the type of electronic data relevant to this case, because personal computers "were in their infancy" when Godwin was decided and because microfilm "does not involve digital, electronic data." Def.'s Reply at 2, 4. With regards to Ross, May contends that the case only addressed "the trial court's recharacterization of damages" and that it has no precedential value because it is an unpublished Court of Appeals decision that predates July 1, 2009. Id. at 4-5 (citing Ark. Sup. Ct. R. 5-2(c) ("Opinions of the Supreme Court and Court of Appeals issued before July 1, 2009, and not designated for publication shall not be cited, quoted, or referred to by any court or in any argument, brief, or other materials presented to any court....")).

Having argued that the authority on which IDM relies is unpersuasive and inapplicable, May asserts that Infinity Headwear alone controls the Court's determination of his motion because its facts mirror the case at bar and because as "the only Arkansas court to squarely address the issue" of whether electronic data can be converted it expressly declined to "create a new cause of action for the conversion of electronic data." Def.'s Br. at 3 (quoting Infinity Headwear, 447 S.W.3d at 143) (internal quotation marks and emphasis omitted). May also highlights Infinity Headwear's reliance on R.K. Enterprise, LLC v. Pro-Comp Management, Inc.,

8

158 S.W.3d 685 (Ark. 2004) as evidence that Arkansas does not treat the unpermitted taking or copying of electronic data as conversion. Id. IDM responds that neither R.K. Enterprise nor Infinity Headwear "squarely address[ed]" this question but instead focused on preemption of tort claims by the Arkansas Theft of Trade Secrets Act ("ATSA"), making any additional statements about conversion mere dicta. Pl.'s Opp'n at 5-6.

IDM's reading of the case law is more persuasive. The Infinity Headwear court faced the question of whether a former employee "unlawfully took electronic business data from Infinity" when he emailed files from the plaintiff's database to his personal email account that included "sales plans, margins, marketing and operating costs, customer and supplier lists, royalty negotiations, and future project ideas." Infinity Headwear, 447 S.W.3d at 139. Infinity originally claimed that the defendant had violated the ATSA but amended its complaint to drop the trade secrets claim after the circuit court denied its motion for a temporary restraining order on the basis that Infinity had failed to adequately protect its information as required by the ATSA. Id. at 139-40. The circuit court then granted the defendant's motion for summary judgment on Infinity's conversion claim "because, according to it, [the Arkansas] supreme court has not recognized a cause of action for conversion of intangible things like Infinity's data and, in any event, [the defendant] did not deprive Infinity of the data or its use." Id. at 140. Infinity appealed, arguing in part that the circuit court erred in granting summary judgment on the conversion claim. Id.

The Arkansas Court of Appeals began its discussion of conversion by stating that the ATSA "preempts tort claims for conversion of trade secrets" and "is the exclusive remedy" for trade secret misappropriation. Id. at 142-43 (citing R.K. Enter., 158 S.W.3d at 688-90). The court stated that "this fact answer[ed] Infinity's electronic-data conversion claim." Id. at 143. The

9

court added that "[t]o the extent it asks us to create a new cause of action for the conversion of electronic data, we decline to do so," and instead affirmed the circuit court's decision to reject the claim. Id. Although this final statement reflects a belief that a claim for conversion of electronic data would be novel under Arkansas law, it is dicta, or at best an unclear statement of Arkansas law.

May argues that this statement is not dicta and is instead a clear decision that conversion of electronic data is not recognized under Arkansas law, because "the court below entered judgment on the grounds that Arkansas does not recognize a tort for conversion of electronic data; Infinity Headwear appealed precisely that ruling; and the Court of Appeals declined to create a new cause of action for conversion of electronic data." Def.'s Reply at 2. This argument oversimplifies the language and posture of the case. The circuit court determined that the conversion claim failed both because the Arkansas Supreme Court had not recognized such a claim and because the defendant "did not deprive Infinity of the data or its use." Infinity Headwear, 447 S.W.3d at 140. The Court of Appeals did not address the parties' detailed arguments as to whether such a claim for non-trade secret intangibles was cognizable and also failed to address the lower court's statement that Infinity had to show that it was deprived of the data or its use, despite Infinity's argument that this requirement added a new element to the common law claim. See Abstract and Brief of Appellant at Arg. 2-5 Infinity Headwear, 477 S.W.3d 138 (Ark. Ct. App. 2014) (No. CV-2013-1033), 2014 WL 7264993 at *35 ("Appellant Br."); Appellee's Brief at Arg. 4-10, Infinity Headwear, 477 S.W.3d 138 (Ark. Ct. App. 2014) (No. CV-2013-1033), 2014 WL 7264994 at *6-12 ("Appellee's Br.").

Instead, the clear language of the Court of Appeals' decision shows that the court determined that although Infinity had dismissed its ATSA claims, its conversion claim was still

premised on the misappropriation of trade secrets and was therefore preempted. The court reached this determination despite neither party having discussed ATSA preemption in their appellate briefs. This finding permitted the court to resolve the claim without also resolving the more contentious questions of whether conversion of electronic data was cognizable and what would constitute the elements of such a conversion claim. Specifically, the Infinity Headwear court did not address whether misappropriation of non-trade secret electronic data could be a conversion, which is the issue this Court is certifying.

Therefore, the court's statement that it declined to create a new cause of action was not "at the core of the decision," contra Def.'s Reply at 2, but was instead a comment that was "unnecessary to the decision in the case and therefore not precedential." Black's Law Dictionary (10th ed. 2014).[2] Similarly, R.K. Enterprise determined that the ATSA was the exclusive remedy for conversion claims involving trade secrets but did not consider or determine whether non-trade secret electronic data could be converted. R.K. Enter., 158 S.W.3d at 690. Neither case referred to or rejected the holding in Godwin[3] or otherwise examined the relevant case law concerning conversion of non-trade secret intangibles.

For these reasons, Infinity Headwear does not provide a clear statement of law to which this Court must defer. Instead, the case law and arguments raised by both IDM and May show

---

[2] May cites to an earlier definition of dicta that refers to "opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not the professed deliberate determination of the judge himself." Def.'s Reply at 1 n.1 (quoting Black's Law Dictionary (6th ed. 1990)). May argues that the issue of conversion of intangibles was "fully argued and considered" by the Infinity Headwear court. Id. at 2. The briefs filed on appeal certainly show that the parties argued the question to the court, but the court's opinion does not demonstrate full consideration of the issue and instead indicates that the court attempted to skirt the question by resolving it on other grounds.
[3] The appellants in Infinity Headwear did, however, cite Godwin, but their argument was similarly not addressed by the Court of Appeals. Appellant Br. at Arg. 5,*39.

11

that no Arkansas court has definitively ruled on the question of whether the Arkansas tort of conversion encompasses the copying and taking of non-trade secret electronic data.

A number of other jurisdictions have considered in great detail the question of whether electronic data can be converted, and this Court believes that the Arkansas Supreme Court should have the same opportunity to undergo its own evaluation of the relevant issues and reach its own conclusion. The decisions of these other jurisdictions demonstrate a range of approaches to claims for conversion of intangibles, with some denying such claims outright, others taking an intermediate approach, and still others finding that the tort of conversion applies to all tangible and intangible property.

Regarding the first approach, May cites to several decisions by other courts finding that taking copies of files and other intangible property does not constitute conversion.[4] See Def.'s Reply at 4. For instance, May cites Community Ties of America, Inc. v. NDT Care Services, LLC, No. 3:12-CV-00429-CRS, 2015 WL 520960 (W.D. Ky. Feb. 9, 2015), appeal docketed, No. 15-5252 (6th Cir. Mar. 13, 2015), in which the court ruled that Kentucky law "requires an unauthorized taking or dispossession to the complete exclusion of the rightful possessor" and that therefore defendants' copying of computer files was not a conversion because the defendants possessed only copies rather than the files themselves. Id. at *19 (emphasis in original). The court reached this decision on the basis that Kentucky's tort of conversion arose from the common law writs of "trover" and "trespass," both of which provided for "recovery of property" and therefore required that the plaintiff had lost exclusive possession of that property. Id. at *20 (internal quotation marks and emphasis omitted). The District Court for the District of Columbia

---

[4] In addition to the cases discussed infra, May cites to Clay County Abstract Co. v. McKay, 226 Ala. 394, 397 (Ala. 1933) for this proposition, but that case concerned trover rather than a more modern form of conversion.

reached a similar result in Council on American-Islamic Relations Action Network, Inc., v. Gaubatz, 793 F. Supp. 2d 311 (D.D.C. 2011), ruling that "a plaintiff fails to state a claim for conversion where the defendant is only alleged to have made copies of documents while the plaintiff retains the originals because the mere copying of documents does not seriously interfere with the plaintiff's right of control." Id. at 340.

In the same vein, May also cites a Seventh Circuit ruling that under California law possession of copies of documents normally would not sufficiently interfere with the owner's property rights so as to constitute conversion, because the "gravamen of the tort of conversion is the deprivation of the possession or use of one's property." FMC Corp. v. Capital Cities/ABC, Inc., 915 F.2d 300, 303-04 (7th Cir. 1990) (emphasis in original). This case does not fully serve May's argument, however, as the Seventh Circuit also stated that intangible property could be converted under certain circumstances and referred to "the modern trend of state law in protecting against the misuse of confidential business information through conversion actions." Id. at 304-05.

Other courts have more affirmatively adhered to the traditional rule that "a plaintiff can recover for conversion only in cases involving tangible chattels" and have declined to expand the scope of conversion actions. See, e.g., In re TJX Cos. Retail Sec. Breach Litig., 527 F. Supp. 2d 209, 211-13 (D. Mass. 2007) (finding that a claim for conversion of cardholder information and data "likely is not cognizable in Massachusetts"), aff'd in part and vacated in part, In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489 (1st Cir. 2009); B&L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 679-80 (Tenn. App. 1995) (finding that a claim for conversion of business relationships with clients failed because conversion is defined as "the appropriation of a chattel,

i.e. tangible property" but that the plaintiffs could assert alternative claims to recover for the loss of their goodwill).

In contrast, many courts (if not the majority) take an intermediate approach and "recognize the conversion of intangible rights," but "only in cases in which those rights arise from, or are merged with, a document, such as a contract, promissory bond, etc." Unltd. Screw Prods., Inc. v. Malm, 781 F. Supp. 1121, 1131 (E.D. Va. 1991) (citing Restatement (Second) of Torts § 242 (1965)). The Restatement explains that "merger" occurs when a document embodies "an intangible obligation" or "is regarded as equivalent to the obligation" and the physical document can therefore "be the subject of conversion as the embodiment of and as representing…the obligation." Restatement (Second) of Torts § 242 cmt. a (1965). A number of other courts have adopted the "merger" doctrine. See, e.g., Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love, LLP, 617 F. Supp. 2d 447, 453-55 (W.D. Va. 2008) (rejecting a claim for conversion of information used to negotiate a contract because the information was an "'unmerged' intangible property right"); In re Wal-Mart Wage & Hour Emp't Practices Litig., 490 F. Supp. 2d 1091, 1101-02 (D. Nev. 2007) (stating that Delaware "follows the modern trend of expanding conversion to encompass intangible goods 'where the intangible property relations are merged into a document'" (quoting Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 439 (D. Del. 1999))).

At least one other court has taken a looser approach to the merger doctrine. In Kremen v. Cohen, 337 F.3d 1024 (9th Cir. 2003), the Ninth Circuit expressed its belief that California did not follow the Restatement's "strict merger rule" and at most "require[d] only some connection to a document or tangible object." Id. at 1033 (emphasis in original). Therefore, the court ruled that a domain name, as a form of intangible property, could be converted due to its connection to

a Domain Name System ("DNS"). Id. at 1033-34. The court found that it was "immaterial" that the DNS was an electronic document and that data relevant to the domain name was stored in several different locations within the DNS. Id. at 1034-35. Another type of intermediate approach requires that the intangible property contain some type of specific property value. For instance, May cites a ruling by the Northern District of Illinois that under Illinois law it "is clear that intangible property can be converted," but "that intangible property must have some value in terms of confidentiality, trade secrets, proprietary business information or the like." Rubloff Dev. Grp., Inc. v. SuperValu, Inc., 863 F. Supp. 2d 732, 750-51 (N.D. Ill. 2012).

Still other courts, however, have rejected the tangible/intangible distinction altogether in addition to the requirements of merger, specific value, or deprivation of exclusive possession. See Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (allowing a conversion claim for a copyrighted and trademarked website embodying plaintiff's idea); Eysoldt v. ProScan Imaging, 957 N.E.2d 780, 786 (Ohio Ct. App. 2011) (finding that "the law has changed" to allow claims for conversion of "identifiable intangible property rights" including domain names and email accounts); Warshall v. Price, 629 So. 2d 903, 904-05 (Fla. Dist. Ct. App. 1993) (allowing a claim for conversion of a patient list when the defendant copied the list and used it to solicit patients because those actions denied the plaintiff "the benefit of his confidential patient list" even though plaintiff never lost access to the list); Conant v. Karris, 520 N.E.2d 757, 763 (Ill. App. Ct. 1987) (finding that allegations that defendants disclosed and used confidential information "contained in a computer printout" were sufficient to state a claim for conversion because "the original owner would be deprived of the benefit of the information" through such disclosure and use (internal quotation marks omitted)).

One widely cited decision to this effect is Thyroff v. Nationwide Mutual Insurance Company, 864 N.E.2d 1272 (N.Y. 2007), in which the Court of Appeals of New York responded to the Second Circuit's certification of the question of whether "conversion applies to certain electronic computer records and data" under New York law. Id. at 1272-73. In Thyroff, the defendant denied the plaintiff access to "personal e-mails, correspondence, and other [customer-related] data storage" that the plaintiff had stored on the defendant's "agency office-automation system" while employed by the defendant. Id. at 1273. The court traced the evolution of the tort of conversion and the common law's "broaden[ing] [of] the remedies available for the misappropriation of personal property," as well as the arguments for and against retaining the traditional boundaries of conversion, ultimately concluding that the growing societal "reliance on computers and electronic data is substantial, if not essential" and necessitated a change in the doctrine. Id. at 1273-78. The court stated that it is "the information memorialized in the document" and not the document's "physical nature" that provides value to the owner, a value that is the same "whether it is saved in a computer's memory or printed on paper" and should be equally protected. Id. at 1278. The court concluded that conversion "must keep pace with the contemporary realities of widespread computer use" and therefore ruled that "electronic records…stored on a computer and…indistinguishable from printed documents" were subject to a claim of conversion in New York. Id.

An Eastern District of Virginia court reached a similar conclusion when faced with a case analogous to the one at bar, in which the plaintiff alleged that the defendant converted confidential information embedded in paper copies of company documents and in a CD containing electronic copies of company documents. E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc., No. 3:09cv58, 2011 WL 4625760 at *1 (E.D. Va. Oct. 3, 2011). The defendant

moved for judgment as a matter of law, arguing in part that such property was "not of the type protected by Virginia conversion law" and that the defendant did not exercise dominion over it because the plaintiff was never completely deprived of its use or value. Id. at *3, 5. The court rejected these arguments, reasoning that because "[t]he purpose of the tort of conversion is to protect individuals from those who interfere with their property rights in a way that is inconsistent with the full exercise of those rights," and because "a decision to limit conversion to tangible property or intangible property merged in a document symbolizing ownership would leave" many individuals unprotected "[i]n this technology-driven world," copies of such "confidential business information…about a company's business plans" could be the subject of a conversion action under Virginia law.[5] Id. at *5. The court further concluded that the jury could have found that the defendant's "use of the copies of that information was an act of 'dominion' inconsistent with [the plaintiff's] property rights, or alternatively, that [plaintiff] was deprived of the exclusive use of the information because of [the defendant's] possession and retention of it." Id. at *6. As a result, the court refused to grant the defendant's motion on the basis that the plaintiff could not prove conversion of its property, but ultimately granted the motion due to insufficient evidence of actual damages. Id. at *7, 9.

This brief overview demonstrates that a number of courts have directly addressed the question of whether and under what circumstances intangibles such as data may be converted and have reached a range of conclusions that reflect the complexity of the issues involved. No Arkansas court has directly ruled on whether intangibles and specifically copies of electronic

---

[5] The court went on to clarify why copies could be the basis of a conversion claim, stating that "it makes no sense to conclude that intangible property loses its protection simply because it appears in a copy of a document or on a CD," particularly because copying "makes it easier for a wrongdoer to convert the intangible property of others." Id. at *5. Therefore, the court declined to rule in a way that "would lead to more unauthorized copying and encourage conversion." Id.

data can be converted; however, based on the authority at hand, this Court is inclined to conclude that under Arkansas law the tort of conversion requires only that a defendant "exercised dominion over property in violation of the rights of the owners." See Godwin, 810 S.W.2d at 38. Indeed, the Arkansas Court of Appeals defines conversion as a wrongful and "distinct act of dominion over the property of another which is inconsistent with the owner's rights" but one that "need not be a manual taking or for the defendant's use." Buck v. Gillham, 96 S.W.3d 750, 753 (Ark. Ct. App. 2003) (citations omitted). This definition does not require a complete deprivation of exclusive possession or limit conversion to chattels, and therefore does not on its face bar claims for conversion of copied electronic data.

In the instant litigation, IDM alleges that May wrongfully exercised authority over IDM's property by copying electronic files containing confidential and proprietary information and that he thereby interfered with IDM's rights to that information. According to this Court's reading of Arkansas common law, those allegations are sufficient to state a claim for conversion. In this Court's view, whether the allegedly converted property consists exclusively of electronic files or includes tangible property is irrelevant so long as the property is not trade secret information governed by the ATSA instead of state tort law; however, because no Arkansas court has examined the issue in detail, much less issued a definitive ruling on the question, this Court believes it appropriate to give the Arkansas Supreme Court the opportunity to do so.

Although May contends that Infinity Headwear provides a definitive ruling to which the Court must defer, May requests that if the Court is disinclined to grant his motion that it instead certify the issue to the Arkansas Supreme Court. The rules of the Arkansas Supreme Court provide that the court "may, in its discretion, answer questions of law certified to it by order of a federal court of the United States if there are involved in any proceeding before it questions of

Arkansas law which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." Ark. Sup. Ct. R. 6-8(a)(1). The Court concludes that there is no controlling precedent, clear statement of law, or persuasive dicta from the Arkansas Supreme Court or the Arkansas Court of Appeals on the question of whether non-trade secret electronic data, standing alone, can be converted under Arkansas law, and that resolution of this question may be determinative of the action pending before this Court. For these reasons, this Court hereby certifies the following question of law to the Arkansas Supreme Court:

Under Arkansas common law, can intangible property such as electronic data, standing alone and not deemed a trade secret, be converted?

### III.   CONCLUSION

For the reasons stated above, the Court requests that the Arkansas Supreme Court answer the above question of law. The Court will issue an order certifying this question to the Arkansas Supreme Court and staying the pending litigation before this Court.

Entered this 3rd day of November, 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge