IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INTEGRATED DIRECT MARKETING, LLC,   )
                                     )
            Plaintiff,               )
                                     )        1:14-cv-1183 (LMB/IDD)
      v.                             )
                                     )
DREW MAY and MERKLE, INC.,           )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

Before the Court is Plaintiff, Integrated Direct Marketing, LLC's Motion for Attorneys'

Fees and Expert Costs with Respect to its Motion for Sanctions, in which Integrated Direct

Marketing, LLC ("plaintiff" or "IDM") seeks $98,494.25, consisting of $63,142.50 in attorneys'

fees for "preparing, prosecuting, and arguing its Motion for Sanctions against Defendant Drew

May" ("defendant" or "May") and $35,351.75 for costs incurred for its forensic computer expert

and for additional forensic computer vendors. Pl., Integrated Direct Marketing, LLC's Mot. for

Att'y's Fees & Expert Costs With Respect to its Mot. for Sanctions [Dkt. No. 300] 1, Sept. 22,

2015 ("Mot. for Fees"). May opposes these requests, arguing that the fees and costs requested are

excessive and unjustified. Def. Drew May's Mem. in Opp'n to Integrated Direct Marketing,

LLC's Mot. for Att'y's Fees & Expert Costs With Respect to its Mot. for Sanctions [Dkt. No.

303] 1, Sept. 29, 2015 ("Def.'s Opp'n"). For the reasons that follow, plaintiff's motion will be

granted in part and denied in part, and plaintiff will be awarded $41,740.22, consisting of

attorneys' fees in the amount of $17,242.50 and expert costs in the amount of $24,497.72.

## I.   BACKGROUND

This civil action arises out of IDM's allegations that May, a former IDM employee, misappropriated IDM's confidential and proprietary information as well as its trade secrets and then used that information to benefit himself and his new employer Merkle, Inc. ("Merkle"). Mem. Op. [Dkt. No. 295] 2, Sept. 8, 2015. Both IDM and Merkle work in the highly competitive data-driven marketing industry to provide data-integrated customer relationship management services. Id. at 5. May worked for IDM from January 2012 until March 2014, when he was fired and left the company on acrimonious terms. Id. at 6. In May 2014, May began working for Merkle. Id.

On September 8, 2014, IDM sued May and Merkle, alleging in part that May wrongfully took IDM's confidential and proprietary information when he copied hundreds of electronic files to his personal external hard drive. Am. Compl. [Dkt. No. 57] ¶¶ 18-28, 76-81, Sept. 8, 2014. The day after filing its initial Complaint, IDM moved for a Temporary Restraining Order and Preliminary Injunction barring May from disclosing any of IDM's proprietary and confidential information and requiring that May immediately return any documents or files containing such information. Pl.'s Mot. for TRO & Prelim. Inj. [Dkt. No. 6] 1, Sept. 9, 2014. Attached to May's response to that motion was his affidavit signed under penalty of perjury, in which he averred that he "did not keep any of IDM's information" after being fired, a statement that was later shown to be false. Opp'n to Request for TRO & Prelim. Inj., Ex. 1, Aff. of Drew May [Dkt. No. 13-1] ¶ 9, Sept. 17, 2014 ("May Aff."). The motion for injunctive relief was ultimately denied. Order [Dkt. No. 21], Sept. 19, 2014.

The unfortunate animosity between the parties resulted in numerous discovery-related disputes. Among the issues raised during discovery were IDM's allegations that May and Merkle

had improperly failed to produce certain documents, that Merkle had improperly instructed May not to answer certain questions at his deposition, and that May had submitted an affidavit containing several false statements. See Pl., Integrated Direct Marketing, L.L.C.'s Mot. for Sanctions for Defs.' Failure to Produce Documents, Submission of a False Affidavit, and Refusal to Answer Questions at Dep. [Dkt. No. 241] 1, June 8, 2015 ("Mot. for Sanctions"). The Court directed IDM to file a motion for sanctions addressing these allegations. Mots. Hr'g Tr. [Dkt. No. 236] 19-25-20:5, June 5, 2015; see also Order [Dkt. No. 238] 2, June 5, 2015. Plaintiff filed a timely Motion for Sanctions and a supporting memorandum that, among various other issues, identified four false statements that May had allegedly made in his affidavit, the most grievous of which was his statement that he "did not keep any of IDM's information." Pl. Integrated Direct Marketing, L.L.C.'s Mem. in Supp. of its Mot. for Sanctions for Defs.' Failure to Produce Documents, Submission of a False Affidavit and Refusal to Answer Questions at Dep. [Dkt. No. 242] 1-2, June 8, 2015 ("Mot. for Sanctions Br.").

During oral argument on plaintiff's Motion for Sanctions, May testified after being placed under an affirmation to tell the truth. Mots. Hr'g Tr. [Dkt. No. 270] 21:1, June 29, 2015 ("Sanctions Hr'g Tr."). After hearing May's testimony and having considered evidence from IDM's forensic computer expert regarding May's suspiciously-timed deletions of IDM files, see Mem. Op. 59, the Court concluded that May's statement that he had not kept any of IDM's information was "just not accurate" and that his affidavit therefore contained "a false statement," Sanctions Hr'g Tr. 39:15-18; however, to incentivize the parties to settle their dispute, the Court withheld its ruling on the Motion for Sanctions. Instead of resolving their dispute, the parties continued the litigation, which proceeded to the summary judgment stage.

After hearing oral argument on the parties' motions for summary judgment, the Court

granted Merkle's Motion for Summary Judgment in total, granted May's Motion for Summary

Judgment in part, and granted IDM's Motion for Sanctions only with respect to "May's

submission of [the] false statement" that he "did not keep any of IDM's information." See Mem.

Op. 59-60 (internal quotation marks omitted); Order [Dkt. No. 296], Sept. 8, 2015 ("Summ. J.

Order"). Specifically, the Court found that not only was May's false statement sanctionable, but

that his "lack of candor regarding his retention of IDM files, coupled with his inflammatory text

messages regarding stealing IDM's clients and employees, poisoned the well for settlement

purposes and caused unnecessary additional litigation, including necessitating IDM filing both its

Spoliation Motion and Motion for Sanctions." Id. (footnote omitted). For these reasons, the

Court ruled that IDM would "be awarded the costs associated with hiring its forensic computer

expert, as well as its reasonable attorneys' fees and costs in preparing and prosecuting its Motion

for Sanctions." Id. at 60. IDM was directed to file "a motion and supporting documentation for

its reasonable attorneys' fees and expenses incurred in preparing and arguing its Motion for

Sanctions and for its forensic computer expert." Summ. J. Order 1.[1]

## II.    DISCUSSION

IDM's Motion for Attorneys' Fees and Expert Costs seeks $63,142.50 in attorneys' fees

and $35,351.75 for costs associated with forensic computer services. Mot. for Fees 1. This

---

[1] Because May's Motion for Summary Judgment was granted as to all counts except Count III, the litigation continues with respect to the conversion claim against May. Summ. J. Order 1; Order [Dkt. No. 348], Dec. 18, 2015. The question of whether Arkansas common law provides a cause of action for conversion of non-trade secret electronic data was certified to the Arkansas Supreme Court, where it remains pending. The remaining motions regarding Count III have been stayed pending resolution of the proceedings in that court. See Order [Dkt. No. 333], Nov. 3, 2015 (certifying question to Arkansas Supreme Court and staying pending motions); Integrated Direct Marketing, LLC, v. Drew May and Merkle, Inc., No. CV-15-944 (Ark. Dec. 3, 2015) (accepting certified question).

request is based on 166.8 hours of work performed by four attorneys, in addition to the costs

incurred by IDM's forensic computer expert and two other forensic computer vendors. Pl.,

Integrated Direct Marketing, LLC's Mem. in Supp. of its Mot. for Att'y's Fees & Expert Costs

with Respect to its Mot. for Sanctions [Dkt. No. 301] 5, 9-10, Sept. 22, 2015 ("Pl.'s Br."). May

opposes the amount sought, arguing that IDM failed to carry its burden of demonstrating the

reasonableness of the fees sought and that it seeks reimbursement for forensic computer work

that was unrelated to the false statement for which sanctions were awarded. Def.'s Opp'n 1.

### A.  Standard of Review

To calculate an appropriate attorneys' fee award, "a court must first determine a lodestar

figure by multiplying the number of reasonable hours expended times a reasonable rate."

Robinson v. Equifax Info. Services, LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v.

The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). A "fee applicant bears the burden of

establishing entitlement to an award and documenting the appropriate hours expended and hourly

rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). To demonstrate the reasonableness of the

hourly rates, the applicant must "produce satisfactory specific evidence of the prevailing market

rates in the relevant community for the type of work for which he seeks an award." Robinson,

560 F.3d at 244 (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)) (emphasis omitted).

"The applicant should [also] exercise 'billing judgment' with respect to hours worked, and

should maintain billing time records in a manner that will enable a reviewing court to identify

distinct claims." Hensley, 461 U.S. at 437 (internal citations omitted). "Where the documentation

of hours is inadequate, the district court may reduce the award accordingly." Id. at 433.

In evaluating "what constitutes a 'reasonable' number of hours and rate" for the work performed, "a district court's discretion should be guided by the following twelve factors:"[2]

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Some of these "factors may not have much, if anything, to add in a given case," but those "that do apply should be considered." In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010).[3]

"After determining the lodestar figure, the 'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" Robinson, 560 F.3d at 244 (quoting Grissom, 549 F.3d at 321) (internal quotation marks omitted). After subtracting those fees, the court "then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id. (quoting Grissom, 549 F.3d at 321) (internal quotation marks omitted).

---

[2] These factors were adopted by the Fourth Circuit in Barber v. Kimbrell's Inc., 577 F.2d 216 (4th Cir. 1978).

[3] May argues that only certain factors are relevant to a sanctions motion and that many of the factors discussed by IDM should not be considered in relation to such a motion. Def.'s Opp'n 2-3. Although defendant's contention that courts have conclusively deemed certain factors to be per se irrelevant in the context of a sanctions motion is not persuasive, the Court agrees that only certain factors are relevant to the particular sanctions motion at issue here.

### B. **Hourly Rates**

IDM's fee calculation is based on the following hourly rates for the following attorneys

employed by the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree

Deakins"):

| Attorney | Hourly Rate |
|----------|-------------|
| Marc L. Zaken | $545 |
| Joleen R. Okun | $395 |
| Zachary S. Stinson | $335 |
| Ashley Totorica | $320 |

IDM contends that these rates are consistent with local rates as well as with each

attorney's experience and credentials and argues that these rates are reasonable because they are

lower than or in the lower range of fees deemed reasonable pursuant to the Laffey matrix and the

Vienna Metro matrix.[4] Pl.'s Br. 5-7. In support of its Motion for Fees, IDM provides a

declaration from Marc L. Zaken ("Zaken"), previously lead counsel for plaintiff,[5] as well as the

firm's online biography for each attorney. See Pl.'s Br., Ex. 1, Decl. of Marc L. Zaken in Supp.

of Pl., Integrated Direct Marketing, LLC's Mot. for Att'y's Fees & Expert Costs with Respect to

its Mot. for Sanctions [Dkt. No. 301-1], Sept. 22, 2015 ("Zaken Decl."); Zaken Decl.,

Attachment B [Dkt. No. 301-1], Sept. 22, 2015 ("Firm Bios."). According to these online

---

[4] The Vienna Metro matrix comes from a decision by another court in this District. See Vienna Metro LLC v. Pulte Home Corp., 786 F. Supp. 2d 1090 (E.D. Va. 2011); see also Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., 127 F. Supp. 3d 607, 619 (E.D. Va. 2015).

[5] After the motions for summary judgment were resolved and before the conversion question was certified to the Arkansas Supreme Court, Zaken and the law firm of Ogletree Deakins were granted leave to withdraw as counsel for IDM. Order [Dkt. No. 321], Oct. 23, 2015.

biographies, Zaken has been practicing law for over thirty years and is the Managing Shareholder of Ogletree Deakins' Stamford, Connecticut office. Firm Bios 1. Joleen R. Okun ("Okun") is "of counsel" in Ogletree Deakins' Washington, D.C. office and has been practicing law for nine years. Id. at 5; see also Pl.'s Br., Ex. 2, Decl. of Jonathan R. Mook [Dkt. No. 301-2] ¶ 6, Sept. 22, 2015 ("Mook Decl."). Zachary S. Stinson ("Stinson"), an associate in the Washington, D.C. office, has been practicing law for more than six years; and Ashley Totorica ("Tortorica"), an associate in the Stamford office, has been practicing for more than five years. Id. at 7, 9.

Beyond Zaken's affidavit and the online biographies, the only supporting documentation provided by IDM is a declaration from Jonathan R. Mook ("Mook"), a partner in the law firm of DiMuro Ginsburg, P.C. Mook Decl. ¶ 2. Mook avers that he has "reviewed the qualifications of the attorneys" and finds that their "hourly rates . . . are reasonable for complex litigation and [are] within the rates charged by experienced counsel in Northern Virginia for such litigation." Id. ¶¶ 7.

May does not submit any affidavits rebutting Zaken's or Mook's declarations, but he argues that these submissions are insufficient to carry IDM's burden of demonstrating that the requested hourly rates are reasonable for the type of work performed. Def.'s Opp'n 4-5. May further argues that the dispute over May's false statement was a straightforward one and that in litigation dealing with similarly uncomplicated issues, courts have deemed appropriate rates of "up to $420/hour for partners, $275/hour for associates with several years' experience, [and] $200/hour for associates with only a few years' experience." Id. at 5 (quoting Route Triple Seven Ltd. P'ship v. Total Hockey, Inc., 127 F. Supp. 3d 607, 620 (E.D. Va. 2015)) (internal quotation marks omitted).

May's arguments are compelling, particularly in light of the conclusory nature of Mook's analysis, the lack of evidentiary support for the requested hourly rates, and the uncomplicated nature of the instant litigation. In a recent Memorandum Opinion addressing an attorneys' fee application for a civil action that presented similarly straightforward issues, this Court rejected the fee applicant's supporting affidavits as conclusory and unpersuasive and declined to use the Vienna Metro matrix, finding that it only applies to "complex civil litigation."[6] Salim v. Dahlberg, No. 1:15-cv-468, 2016 WL 2930943, at *4-6 (E.D. Va. May 18, 2016). The Court's decision with respect to that fee application in Salim v. Dahlberg, No. 1:15-cv-468, 2016 WL 2930943 (E.D. Va. May 18, 2016), controls the outcome here.

Like the declarations rejected by this Court with respect to the Salim attorneys' fee petition, Mook's declaration does not engage in any detailed analysis of the attorneys' backgrounds or of the work performed on the Motion for Sanctions, and instead summarily concludes that the rates charged are reasonable and are consistent with regional rates. Such unsupported conclusions are unpersuasive. See id. at *4. IDM also fails to provide any evidence demonstrating that counsel have been awarded similar fees in the past for similar types of litigation in this district. Indeed, both Zaken and Totorica work out of Ogletree Deakins' office in Stamford, Connecticut, and are not local attorneys, while Okun and Stinson are practitioners in the District of Columbia. The sum total of IDM's submissions is simply inadequate to establish that the fee rates requested are reasonable.

The Court finds that the hourly rates described by the court in Route Triple Seven Limited Partnership v. Total Hockey, Inc., 127 F. Supp. 3d 607 (E.D. Va. 2015), a decision

---

[6] In its Salim decision, this Court also found that the Laffey matrix, which is used in the District of Columbia, was not an appropriate comparator for reasonable rates. Salim, 2016 WL 2930943, at *4, n.4.

issued less than one year ago, are reasonable comparators for the instant fee application. In <u>Route Triple Seven</u>, the court reduced the hourly rate for a partner with 14 years' experience from $595 to $400 and reduced the hourly rate for another partner with more than 20 years' experience from $575 to $420, finding that the hourly rate of $420 "reflects the weight given to the experience of attorneys under the <u>Johnson/Barber</u> test," but reiterating that that rate "is the upper limit for what counts as a reasonable rate for a very competent attorney in an uncomplicated . . . dispute." <u>Id.</u> at 619-21, 621 n. 12. With respect to the instant litigation, Zaken has more than 30 years of experience, indicating that he merits a slightly higher fee rate than the partner with over 20 years' experience awarded the $420 hourly rate in <u>Route Triple Seven</u>. Accordingly, Zaken's hourly rate will be reduced to $450.

Okun's requested hourly rate is the most reasonable; however, it is still excessive in light of Okun's experience and the simplicity of the sanctions issue. In <u>Route Triple Seven</u>, the court awarded the requested hourly fee rate of $400 to both a partner with ten years' experience and a partner with 16 years' experience. <u>Id.</u> at 619. Although Okun's requested hourly rate of $395 is not blatantly excessive in comparison to those fee awards, she is of counsel, rather than a partner, and she has less than ten years' experience and significantly less than 16 years' experience. Accordingly, Okun's hourly rate will be reduced to $350.

Stinson and Totorica have six and five years of experience, respectively, as associates. The <u>Route Triple Seven</u> court reduced a fourth year associate's hourly rate from $415 to $250, and characterized $275 as the appropriate upper limit for an experienced associate's hourly rate. <u>Id.</u> at 619-21. In light of these reasonable comparators, the simplicity of the sanctions issue, and the lack of supporting documentation supplied by IDM, Stinson's hourly rate will be reduced to $275, and Totorica's hourly rate will be reduced to $250.

10

Therefore, the following hourly rates will be used to calculate the lodestar figure:

| Attorney | Hourly Rate |
|---|---|
| Marc L. Zaken | $450 |
| Joleen R. Okun | $350 |
| Zachary S. Stinson | $275 |
| Ashley Totorica | $250 |

### C. **Hours Expended**

IDM's requested fee award is based on an expenditure of 166.8 hours by the four Ogletree Deakins attorneys. This total is based on 34.1 hours spent by Zaken, 14.0 hours spent by Okun, 69.6 hours spent by Stinson, and 49.1 hours spent by Totorica. Pl.'s Br. 5. In support of its request, IDM submitted a redacted copy of the invoice sent by Ogletree Deakins to IDM "[f]or professional services rendered through June 30, 2015." Zaken Decl., Attachment A, Invoice [Dkt. No. 301-1] 1, Sept. 22, 2015.[7]

May argues that the bulk of the hours billed by IDM to reach the 166.8 hour total are excessive, redundant, and irrelevant to the issue on which IDM prevailed, which May estimates was the focus of only one-sixth of IDM's Motion for Sanctions. Def.'s Opp'n 3, 7. May undertook an extensive analysis of counsel's billing records and identified entries he believes

---

[7] Contrary to IDM's calculations, the invoice actually bills for a total of 170.2 hours, with 33.1 hours spent by Zaken, 16.2 hours spent by Okun, 70.9 hours spent by Stinson, and 50 hours spent by Totorica. It is not clear why IDM's hourly totals are different from those reached by the Court and by May, see Def.'s Opp'n 18 n.4, but the reasonable number of hours will be based on the calculations submitted by IDM, because as the fee applicant IDM bears the burden of demonstrating their reasonableness and therefore should not benefit from the higher total hours calculated by the Court and May.

should be deducted from the fee application, including entries he deems to be vague or

impermissibly block-billed, as well as a five-sixths or an 83% reduction in the hours for entries

that refer to the Motion for Sanctions in its entirety. Id., App. A-E [Dkt. No. 303-1], Sept. 29,

2015. May also contends that courts addressing fee applications for similar motions have

awarded fees for only 30-40 hours of work and that that amount of time is far more reasonable

with respect to IDM's Motion for Sanctions, particularly because IDM only prevailed with

respect to a small part of that motion. Id. at 5-7.

　　As May correctly argues, a review of counsel's billing records demonstrates that the total

hours claimed by IDM are not adequately documented. For example, many billing entries refer to

work performed with respect to IDM's allegations that May and Merkle had improperly failed to

disclose certain documents, including ones from Todd Greer and Brian Wiedower, allegations

that were distinct from the issue of May's false statement. See, e.g. Mot. for Sanctions Br. 1-3.

Similarly, many entries refer to work on the Motion for Sanctions generally, even though May

and Merkle filed separate oppositions to IDM's Motion for Sanctions, and IDM filed two reply

briefs responding separately to those oppositions.[8] Many of these pleadings, particularly those

related to Merkle, were unrelated to May's false affidavit, and therefore hours spent on such

work are not recoverable. Even when an entry references time spent just on the initial pleadings

---

[8] Those pleadings included Defendant Merkle, Inc.'s Opposition to Plaintiff's Motion for
Sanctions for Defendants' Failure to Produce Documents, Submission of a False Affidavit and
Refusal to Answer Questsions [sic] at Dep. [Dkt. No. 249], June 15, 2015; Defendant Drew
May's Memorandum in Opposition to Plaintiff's Motion for Sanctions [Dkt. No. 25-], June 15,
2015; Plaintiff, Integrated Direct Marketing, L.L.C.'s Response to Defendant Merkle's
Opposition to its Motion for Sanctions for Defendants' Failure to Produce Documents,
Submission of a False Affidavit, and Refusal to Answer Questions at Deposition [Dkt. No. 261],
June 22, 2015; and Plaintiff, Integrated Direct Marketing, L.L.C.'s Response to Defendant May's
Opposition to its Motion for Sanctions for Defendants' Failure to Produce Documents,
Submission of a False Affidavit and Refusal to Answer Questions at Deposition [Dkt. No. 262],
June 22, 2015.

for IDM's Motion for Sanctions, May's opposition thereto, or IDM's reply to May's opposition, the entire time billed is not recoverable because, as May correctly argues, the issue for which fees will be awarded—namely, May's false statement—was only one of many issues raised in the Motion for Sanctions.

May also argues that fees should not be awarded for block-billed entries, which refer to work performed on multiple projects, of which the Motion for Sanctions is only one. Def.'s Opp'n 14. May's argument is persuasive. Counsel's invoice contains numerous block-billed entries that fail to make clear how much time was actually spent on the sanctions issue. For example, on June 11, 2015, Stinson billed 1.40 hours for a "[t]eleconference with Mark Pedroli regarding strategy and next steps on spoliation and sanctions issues, additional discovery, and additional research and responses." Invoice 22. This entry explicitly includes work on other motions and issues unrelated to the Motion for Sanctions, and does not identify the actual time spent on the sanctions question. Entries of this kind cannot provide a basis for a reasonable fee award. Fees are also not recoverable for vague billing entries that make it impossible to determine whether work was performed just on the Motion for Sanctions or whether the work related to the multiple other motions that were pending during the same period. For instance, on June 10, 2015, Okun billed for time spent "[r]eview[ing] correspondence about the pending response and reply dates." Id. at 19. Because the Motion for Sanctions was filed during the same time period as various other motions, it is not possible to determine whether this time related to the Motion for Sanctions, and therefore this entry and those like it are impermissibly vague.

Finally, the invoice reflects the repeated duplication of efforts by counsel and thereby demonstrates that the hours requested are excessive. Four attorneys were not required for work on a straightforward motion like the Motion for Sanctions, and especially not for the

13

uncomplicated issue of May's false statement. Nonetheless, multiple attorneys repeatedly billed for the same or similar work where only one attorney was required.

Due to these problems with counsel's billing entries, IDM has failed to carry its burden of demonstrating the reasonableness of the 166.8 hours for which it seeks an award. Accordingly, the number of hours must be reduced to account for the number of billing entries that are clearly unrelated to May's false statement, are block-billed, or are vague. Furthermore, because it was excessive to have four attorneys working on the straightforward sanctions issue, fees will only be awarded for work performed by lead counsel Zaken, who argued the Motion for Sanctions, and by the associate Stinson, who appears to have billed the most hours on the motion.

Because both of these attorneys' billing entries contain many of the problems discussed above, the hours for which they will be awarded fees will be greatly reduced. For example, Zaken bills on June 7, 2015, for 2.20 hours of work to "[re]vise motion for sanctions, emails with team, teleconference with Chad Slater [REDACTED]." Id. at 14. It is not possible to tell from this billing entry whether this work was entirely related to the Motion for Sanctions or whether it related to other issues. Similarly, on June 25, 2015, Zaken bills for 5.50 hours to "[r]eview motions to prepare for court hearing," and on June 26, 2015, Zaken bills for 5.0 hours to "[p]repare for court hearing, attend court hearing, [and] follow up with client." Id. at 35-36. Because multiple motions were set for oral argument at the June 26, 2015 hearing, these billing entries do not adequately demonstrate the amount of time spent preparing for or arguing the Motion for Sanctions as opposed to the other pending motions. Many of Stinson's entries suffer from similar deficiencies, such as his entry on June 25, 2015 for work on "[v]arious emails and coordination/preparation for evidentiary hearing on spoliation and perjury before Judge Brinkema and motions to file under seal/redacted versions before Magistrate Judge Davis;

14

conferences with paralegal to coordinate same." Id. at 35. This entry, like many others billed by Stinson, is impermissibly block-billed.

In light of these pervasive billing problems, Zaken will be awarded one-half of the 34.1 hours requested for his work, for a total of 17.05 hours. At Zaken's reduced hourly rate of $450, the total fees awarded for Zaken's work will be $7,672.50. Stinson will also be awarded one-half of the 69.6 hours requested for his work, for a total of 34.8 hours. At Stinson's reduced hourly rate of $275, the total fees awarded for Stinson's work will be $9,570.00. Accordingly, plaintiff will be awarded a total of $17,242.50 in attorneys' fees. This total sum is reasonable and reflects the uncomplicated nature of the sanctions issue. It also appropriately reflects IDM's failure to carry its burden of demonstrating the reasonableness of its requested fees.

### D. Forensic Computer Expert Costs

IDM also requests an award of the costs incurred as a result of forensic computer examinations performed by two different companies and for the work of IDM's retained forensic computer expert. First, IDM seeks recovery of the costs for the "gathering and imaging" of "May's external hard drive" by LDiscovery, LLC, a company based in McLean, Virginia, which charged $4,273.53 for "services regarding brief analysis and imaging, copying and shipping of media" to IDM's counsel and expert, and execution of declarations. Pl.'s Br. 9-10. Second, IDM seeks recovery of the costs involved in imaging May's home computer. Id. at 10. Because that computer was located in May's Arkansas home, IDM used an Arkansas company called Arkansas Investigations for that work, at a total cost of $6,580.50. Id. Third and finally, IDM seeks to recover the costs of retaining Craig Ball, Esq. ("Ball") as its forensic computer expert. Id. Ball was responsible for processing the electronically stored information on May's hard drive and computer, drafting expert and rebuttal reports, and being deposed. Id. Ball's services cost

15

$24,497.72, bringing the total costs for forensic computer examinations sought by IDM to $35,351.75.

May correctly argues that the costs for LDiscovery and Arkansas Investigations are not recoverable because those entities were never disclosed as expert witnesses and therefore are not covered by this Court's Order, which provided for an award of the costs for "[plaintiff's] forensic computer expert." Summ. J. Order 1; see also Def.'s Opp'n 9-10. That ruling only applies to the costs for Ball's work, as Ball was plaintiff's only "forensic computer expert," as well as the only expert whose work was explicitly relied upon by the Court, see Mem. Op. 58-59, and the only expert referenced in IDM's Motion for Sanctions. See Mot. for Sanctions Br. 11, n.20 (citing Ball's expert report, which was also attached to the supporting memorandum). The ruling therefore does not extend to any other forensic computer examinations or vendors. Moreover, as May argues, IDM would have incurred some of those costs regardless of May's false statement. Accordingly, the costs incurred for LDiscovery's and Arkansas Investigations' services are not recoverable, but costs for Ball's services will be awarded.

May acknowledges that the costs for Ball's services are encompassed by this Court's ruling; however, May disputes the amount requested for Ball's work. Ball's invoice demonstrates that he billed IDM for 47.25 hours of consulting at an hourly rate of $500, for 0.50 hours of travel at an hourly rate of $250, and for $747.72 in out-of-pocket expenses. Zaken Decl., Attachment C, Craig D. Ball, P.C., Invoice for Forensic Technology Consulting Services [Dkt. No. 301-1], Sept. 22, 2015 ("Ball Invoice"). This invoice reflects Ball's time spent reviewing data, drafting his expert report and rebuttal report, and preparing for and being deposed. Id. May argues that Ball's work was duplicative of the work done by the two forensic computer vendors, that only a minor portion of Ball's work could be related to May's affidavit, and that Ball's

16

record-keeping is insufficient to demonstrate what portion of his work was in fact related to the affidavit and consequently to May's false statement. Def.'s Opp'n 10-11.

Although May contends that IDM already had the information it needed regarding May's false statement when it received a file listing from LDiscovery, making Ball's work on that issue redundant, id., the Court relied on Ball's expert report to determine that May's statement was in fact false. See, e.g., Mem. Op. 58-59. Because Ball's work was directly relevant to the sanctions decision, the Court will award costs for Ball's work as it relates to that decision, even if such work was duplicative of LDiscovery's services. Moreover, May's false statement made it reasonable for plaintiff to be skeptical about what was actually on May's hard drive and required more extensive and expensive expert analysis. It is difficult to separate out the forensic computer work that was required as a result of that false statement from unrelated work or work that would have been performed regardless of May's misconduct. Accordingly, IDM will be awarded the full amount of $24,497.72 that Ball invoiced, an amount that the Court finds reasonable under the circumstances described above.

### III.    CONCLUSION

For the reasons stated in this Memorandum Opinion, plaintiff's Motion for Attorneys' Fees and Expert Costs will be granted in part and denied in part, and plaintiff will be awarded attorneys' fees in the amount of $17,242.50 and computer forensic expert costs in the amount of $24,497.72, for a total award of $41,740.22, by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 28th day of June, 2016.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

17